## STEPHEN H. BOWMAN

*v.*

## THE PEOPLE, for use of Robert Hoxsey.

1. EXECUTION—*what is subject to levy and sale.* The purchaser of land at an execution sale acquires no interest in the land before the expiration of the time allowed for redemption, which is liable to be levied on and sold on an execution against him.

2. Where land has been sold by a sheriff on an execution against the owner, and a certificate of purchase given to the purchaser, and afterwards, and before the time of redemption expires, the interest of the purchaser in the land is sold, on an execution against him, the purchaser at such second sale takes nothing, nor will the sheriff be authorized, in case of a subsequent redemption from the first sale, to pay the redemption money to the purchaser at the second sale.

APPEAL from the Circuit Court of Jersey county; the Hon. CYRUS EPLER, Judge, presiding.

The principal facts in this case are not controverted, and may be briefly stated:

On the 8th day of November, 1872, an execution was sued out upon a judgment which Lewis W. Moore, late sheriff of Madison county, who sued for the use of Robert Hoxsey, had obtained against Henry C. Massey and others, directed to the sheriff of Jersey county to be executed. That execution was subsequently levied upon certain lands belonging to Henry C. Massey, one of defendants in the execution, and such proceedings were had that on the 28th day of December, 1872, the sheriff sold the lands, and the same were purchased by Robert Hoxsey, the beneficiary plaintiff in the execution, for

the sum of $1036.49, to whom the sheriff issued the usual certificate of purchase, which was afterwards recorded in the county where the lands are situated.

On the 19th day of July, 1873, the sheriff of Jersey county, by virtue of an execution issued upon a judgment which Henry O. Goodrich obtained in the Macoupin circuit court against Robert Hoxsey and William C. Sherly, levied upon the interest of Robert Hoxsey in the same lands he had purchased at the sheriff's sale on the execution against Massey. On the 16th day of August, 1873, the sheriff, having given the usual notice prescribed by law, sold all the right, title and interest of Robert Hoxsey in and to these lands, and the same were purchased by Henry C. Massey, the former owner, for the sum of $480.65, to whom the sheriff issued the usual certificate of purchase, in which it was recited the purchaser would be entitled to a deed for the lands, unless redeemed within fifteen months. The latter certificate, like the former, was recorded in the proper county.

On the 27th day of December, 1873, Henry C. Massey redeemed these lands from the sale to Robert Hoxsey, by paying to defendant, as sheriff, for that purpose, the sum of $1140.13, and received a certificate of redemption. The sheriff, however, immediately paid the money back to Massey, taking his receipt for it, and this action is brought on defendant's official bond as sheriff, to recover the amount of the redemption money.

All matters of defense that could be properly pleaded, by agreement were given in evidence under the plea of *non est factum*, and, on the trial, the court to whom the cause was submitted, without the intervention of a jury, found the issues for plaintiff, and rendered judgment in his favor for the amount of the redemption money, and interest, from which judgment defendant prosecutes this appeal.

Mr. W. R. Welch, and Mr. A. A. Goodrich, for the appellant.

Messrs. Warren & Pogue, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

But a single question arises on this record, viz: whether a purchaser of real estate at an execution sale has such an interest in the land itself, before the expiration of the period allowed by law to the judgment debtor to redeem, as is subject to levy and sale.

Under our statute, "all and singular the lands, tenements, real estate" of the judgment debtor are liable to be sold on execution. The term "real estate," as used in the statute, is defined to include "lands, tenements, hereditaments, and all legal and equitable rights and interests therein and thereto, including estates for the life of the debtor or of another person, and estates for years and leasehold estates, where the unexpired term exceeds four years." Chap. 77, secs. 3 and 10, R. S. 1874.

Unless the interest of the purchaser of lands at an execution sale comes within this definition of "real estate," or some clause thereof, it is plain that interest is not subject to levy and sale on execution. The certificate itself is not liable to be seized under execution, and sold as tangible property. At most, it is but evidence of what the officer has done under the execution, and of the purchaser's bid, and what rights, under the law, he will be entitled to—that is, if the land is redeemed he will receive back the amount of his bid, with interest, at a rate fixed by statute, and if not redeemed he will be entitled to a deed for the land. Such certificates are assignable under our statute, and are no more subject to levy and sale on execution than a judgment of a court of law.

What interest does a purchaser of lands at a sheriff's sale obtain in the land itself before the expiration of the period of redemption? Does that interest, whatever it may be, come within any definition given of real estate? We think it does not. It is not expressly defined, and if it is comprehended at all in the statutory definition, it must be by the indefinite words, "all legal and equitable rights and interests therein and thereto." But we are of opinion it is neither a legal nor equi-

table estate in the land itself before the lapse of the period allowed the judgment debtor for redemption. Previous to that time he has no absolute right in the premises. At most it is a mere inceptive interest in the soil, but, being contingent, it may never become an absolute title to the estate. Perhaps the most accurate definition that can be given is, it is a bid for the land under judicial authority, that may or may not become an interest in the soil. Should the land be redeemed after the death of the creditor, the money would go to his personal representatives, and not to his heirs; but if it is not redeemed, and the bid becomes an absolute purchase, it would go to his heirs, and not his personal representatives. It is, therefore, an unascertainable and undefinable interest, and it can not be known, before the expiration of the period of redemption, whether it will be personalty or realty.

It can not be said to be a legal estate in the purchaser, for the legal title to the land still remains in the judgment debtor until the bid becomes absolute by the lapse of time. Should an injury be inflicted upon the estate, it could only be redressed by the judgment debtor. A purchaser at a judicial or execution sale has no such interest in the land bought as would enable him to maintain any action in regard to it, until after the maturity of his title; nor is it an equitable estate in the land, according to any definition given of an equitable estate. It is apprehended an equitable estate is one, although lacking the characteristics of a legal estate, that the owner may enforce in a court of chancery. What right has a buyer at an execution sale in the land that he can enforce before the expiration of the time allowed for redemption? Absolutely nothing. He can not intermeddle with it without subjecting himself to an action. Under the forms of the law, he has bid so much for the debtor's property, and it is optional with the debtor whether he will pay the money or allow the bidder to take the land. The bidder has no election in the matter. It is not in his power to enforce any interest in the land in any court. It seems to us it is illogical to say he has acquired, by his bid, a "legal or equitable right or interest therein and thereto" the land bought.

It is neither the one nor the other. Like a married woman's inchoate right of dower in the lifetime of her husband. She may or she may not have an estate in the lands of her husband. Such estates, so contingent and uncertain, have never been regarded as property that was liable to be sold on execution.

But, conceding the proposition the buyer at an execution sale has an equitable, contingent interest in the land bought, this court has expressly ruled that a contingent, uncertain equitable title can not be sold on an execution at law. *Baker* v. *Copenbarger*, 15 Ill. 103. Obviously, it is for the reason it can not then be known, with any degree of certainty, what the officer is selling. The case at bar affords a most apt illustration. What did Massey buy at the sale under the execution against Hoxsey? Did he buy the land? Certainly not the land, for he redeemed it from the prior sale, and that left no interest whatever, either contingent or otherwise, in the former purchaser under the execution against himself. Did he buy the redemption money? The sheriff did not propose to sell that. It was not then in existence, and it could not then be known that it ever would be.

There can be but one rational answer to these inquiries. The officer sold nothing, and the bidder obtained nothing. The pretended levy and sale was a mere nullity. It will be observed the sale to Massey was with redemption. The execution debtor had twelve months, and his creditors three months thereafter, to redeem from the sale. But what was there to redeem? Hoxsey, the judgment debtor, had then no shadow of an interest in the lands. They had been redeemed under the forms of the law from the sale to him, and had become as much the property of Massey, the former owner, as if they had never been sold under the execution against him. Nor could the judgment debtor, or his creditors, redeem the redemption money, for it had never been sold, and was not in the possession of the sheriff, so that neither Hoxsey nor his creditors could redeem it, had they desired the privilege. It had been paid over to Massey.

The absurdity of the whole proceeding is made manifest by a mere statement of the uncontroverted facts. Massey owed Hoxsey over $1100, for which his land had been sold, and bought in by his creditor, under the execution. Subsequently, Hoxsey's interest in the lands he had bought in satisfaction of his debt, was levied upon and sold on an execution in favor of Goodrich, for less than $500, and Massey, the former owner, became the purchaser. Within the period allowed by law, Massey redeemed his lands from the sale to Hoxsey, and; by virtue of his purchase under the Goodrich execution against Hoxsey, claimed and obtained from defendant the money paid to him, as sheriff, to redeem the land. Thus it is seen he has now his land back free from all incumbrances, also the money paid to redeem it, and it has cost him a sum less than $500.

Our opinion is, Massey obtained no title whatever, either to his own lands or the money paid to redeem them from the former sale, under the pretended sale on the Goodrich execution. This view of the law, we think, is sustained by the decisions in this court and elsewhere, so far as we have been able to find any bearing on the question involved. *Baker* v. *Copenbarger, supra; Hatch* v. *Wagner,* 15 Ill. 127; *Den* v. *Steelman et al.* 5 Hal. (N. J.) 193; *Kidder* v. *Orcult,* 40 Maine, 589; *Jackson* v. *Willeard,* 4 Johns. 41; *Wilks* v. *Farris,* 5 Johns. 335; *Hagerman* v. *Jackson,* 1 Wend. 502.

Some of the cases cited are not altogether analogous, and others were decided with reference to local statutes, but all of them, in a greater or less degree, sustain the principle we are endeavoring to maintain, and the reasoning is illustrative of the case in hand.

In *Den* v. *Steelman, supra,* it was expressly ruled, that a purchaser of lands at sheriff's sale, in that State, has not, previous to the making and delivering to him of a deed for such lands, such an interest therein as can be levied upon and sold by virtue of an execution against the lands of the debtor.

In *Jackson* v. *Willeard, supra,* Ch. J. KENT delivering the opinion of the court, it was declared that lands mortgaged can not be sold on execution against the mortgagee before a fore-

closure of the equity of redemption, though the debt be due and the estate of the mortgagee has become absolute at law. And by a parity of reasoning, we may reach the conclusion, lands sold upon execution, before the expiration of the period allowed the debtor for redemption, are not liable to be resold on execution, as the property of the purchaser. Until the lapse of that period, he has no absolute estate, and absolutely no interest that attaches to the land. Indeed, the purchaser himself could sell no interest in the lands. All he could do would be to assign the certificate, and that, as we have seen, is not subject to levy and sale on execution.

Reference has been made to the case of *Page* v. *Rogers*, 31 Cal. 293, which holds, a purchaser of lands at execution sale has such an interest therein as is subject to levy and sale, even before the expiration of the time allowed for redemption, but we think the cases cited rest upon the sounder and better reasoning, and conform more nearly to the analogies of the law. They are more in harmony with the decisions of this court, so far as the question has been incidentally discussed.

The cases of *Morrison* v. *Turetz*, 7 Watts, 437, *Slater's Appeal*, 28 Penn. State R. 169, *Stephens' Appeal*, 8 Watts & Sergeant, 186, and other cases in that court, simply hold, a purchaser of lands at sheriff's sale has such an inceptive interest in the soil as may be bound by a judgment, and which, when perfected by payment and conveyance, gives the incumbrancer, by relation, the benefit of his security to the extent of the whole estate. Had the sheriff, in this case, brought the money into court, and had the contention been as to the proceeds, as was the case in *Stephens' Appeal*, *supra*, some of the cases cited would be more in point.

But no authority can be found anywhere for the action of the sheriff in paying the redemption money directly to Massey, to whom he may have thought it equitably belonged. Whether the judgment was a lien upon the proceeds, was a judicial question, and one the sheriff had no authority to determine. The utmost he could do, in such a case, would be to bring the

money into court, where it could be safely kept until the parties claiming it could litigate, in some appropriate mode, their respective rights.

The judgment will be affirmed.

*Judgment affirmed.*