(No. 19898.

THE UNITED ELECTRIC COAL COMPANIES, Appellee, *vs.* THE KEEFER COAL COMPANY OF ILLINOIS, Appellant.

*Opinion filed February 21, 1930.*

REARICK & MEEKS, and SIMS, GODMAN & STRANSKY, (GEORGE F. REARICK, and FRANKLIN J. STRANSKY, of counsel,) for appellant.

ACTON, ACTON & SNYDER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The United Electric Coal Companies filed a bill in the circuit court of Vermilion county on July 29, 1927, against the Keefer Coal Company of Illinois, the object of which was to obtain an injunction against the declaration of a forfeiture of a certain lease of lands in Fulton county, Illinois, for the purpose of mining and removing the coal in and underlying such lands until the arbitrators to whom had been submitted a question in dispute as to the quantity of merchantable coal within the terms and meaning of the lease had rendered their finding in the premises and until the court should otherwise order, and for further equitable relief. Upon the filing of the bill a temporary injunction was granted in accordance with the prayer of the bill. The bill was answered, a cross-bill was filed by the New York Trust Company, the trustee in a mortgage on the property, two of the three arbitrators made an award, supplemental bills were filed and answered, the cause was heard, and on April 27, 1929, a decree was entered which construed the lease, set aside the award, ascertained the whole amount of rental to become due from the lessor to the lessee under the lease and the amount which had accrued on the date of the decree, being $143,016.95, and the complainant having brought that sum into court and made payment of it to the Keefer Coal Company of Illinois, the injunction bonds of $175,000 required by the previous decrees of the court were ordered released and all liability under them discharged because of the payment to the Keefer Coal Company of Illinois, the acceptance of the money to be without prejudice to any of the claims of the Keefer Coal Company or its right to question, on appeal, any provision of the decree except as to any liability on the injunction bonds. It was further decreed that the

Keefer Coal Company of Illinois be enjoined from declaring any forfeiture of the lease so long as the United Electric Coal Companies made payment to the Keefer Coal Company of the payments under the lease as they may hereafter accrue, at the times and in the amounts determined by the decree. The Keefer Coal Company of Illinois has appealed to this court directly on the ground that a freehold is involved.

The appellee has filed a motion to transfer the cause to the Appellate Court for the Third District, the appellant, suggestions in opposition, and the motion was taken with the case.

This litigation grew out of a mining lease of 1320 acres of land in Fulton county, Illinois, by William W. Keefer, the owner, to the Electric Coal Company, dated May 1, 1923, but actually executed a few days later, whereby the lessor leased the premises to the lessee for the purpose of mining and removing the coal for a period of fifteen years and eight months, beginning May 1, 1923, and ending December 31, 1938. The lessee agreed to pay as rent the aggregate principal sum of $2,000,000, to be increased or diminished, however, in the manner provided in the lease, if there is an overplus or a deficiency of merchantable coal in the premises as the lease provides. The rent was agreed to be paid in installments of $25,000 on or before January 1, 1924, for the remaining eight months of 1923, $75,000 on or before January 1, 1925, for 1924, and $135,714.38 each succeeding year, payable in quarterly installments of $33,928.57, beginning April 1, 1925. The rent of $2,000,000 was predicated upon 1000 acres of merchantable coal, surface measurement, underlying the premises leased, and it was agreed that upon uncovering the coal a complete survey of the leased premises would be made by engineers of the parties to determine the quantity of merchantable coal in the premises, and if the survey showed more than 1000 acres of merchantable coal,

surface measurement, in the premises, the lessor should be paid by the lessee additional rent therefor. at the rate of $2000 an acre, and if the survey showed a deficiency of merchantable coal a deduction would be made from the rent reserved of $2000 an acre. Should any question arise between the parties as to the quantity of merchantable coal, provision was made for submitting the question to arbitration.

The contract is signed by Keefer and the Electric Coal Company. Attached to it is a guaranty executed by the United Electric Coal Companies reciting that it owns all the capital stock, except qualifying shares, of the Electric Coal Company and controls its business in operation and agrees that the Electric Coal Company will make all payments specified in the lease and perform all its covenants. Attached to the bill as an exhibit is an agreement between Keefer and the Keefer Coal Company of the first part and the United Electric Coal Companies of the second part, reciting the lease of May 1, 1923, its assignment by the Electric Coal Company, the guaranty by the United Electric Coal Companies and the assignment by Keefer of all his rights in the premises to the Keefer Coal Company, and stipulating that the party of the first part sells to the party of the second part the premises described, with the agreement that when the money specified in the lease shall have been paid, the party of the first part will convey and assure to the complainant by warranty deed, free of incumbrance, the fee simple title to the land, furnishing abstracts showing merchantable title and agreeing to cure any defects. The United Electric Coal Companies went into possession of the land and began and continued to mine coal by the stripping method. The engineers for the respective parties made a joint survey of the land and were unable to agree upon the number of acres underlaid with merchantable coal, the appellee's engineer finding that there were 874.42 acres and the appellant's that there were 911.54

acres. On October 28, 1926, the United Electric Coal Companies notified the Keefer Coal Company that a dispute existed as to the amount of merchantable, practically recoverable, coal in the premises and as to the amount of the thirteen annual payments beginning in January, 1926, and thereafter requested that the questions be submitted to arbitration and named Walter C. Lindley as arbitrator. The Keefer Coal Company named James N. Jarvis as arbitrator, and these two selected John C. Slade as the third member, as provided by the lease. The arbitrators proceeded to a hearing, and an award was rendered by Jarvis and Slade, in which Lindley did not join, fixing the number of acres at 887.37.

The appellant contends that it is entitled to bring its appeal directly to this court because it is permanently restrained by the decree from declaring a forfeiture of the contracts so that the right, title and interest of the complainant in and to the land is declared, confirmed and protected and the appellant is prevented from acquiring that interest through a forfeiture, and it insists that the interest of the complainant in the land is a freehold estate. It is undoubtedly true, as the parties agree, that the lease of the land and the accompanying contract constitute a sale of the land. Upon compliance with the terms of the contract the appellee (the vendee) will be entitled to a conveyance of the title in fee simple. The right of a vendee of land to receive the title upon performance of his contract is neither a fee simple title nor a freehold estate. The title to the land in question is held by the appellant. It is not involved in this litigation. It is subject to the terms of the contract of sale, and upon the performance of those terms by the vendee the appellant will be bound to convey the land to it. The relation of the parties to the title is in no manner changed by the decree. The question of law involved is the construction of the contract, and the ques-

tion of fact is the number of acres of land which under the contract, properly construed, the appellee must pay for.

The case of *Fowler* v. *Marion and Pittsburg Coal Co.* 315 Ill. 312, which the appellant cites, does not support its claim that a freehold is involved. In that case the lessor in a mining lease filed a bill against the lessee demanding a release, alleging a forfeiture of the title. The bill was dismissed, and upon appeal by the complainant to this court it was held that the lease conveyed a freehold, which was directly put in issue, and that a direct appeal lay to this court. The other cases cited by the appellant on this point are of the same character, deciding no more, so far as this question is concerned, than that a lease of oil, gas or minerals conveys an interest in land which may be a freehold. In this case the lease created a freehold, but the suit is not about it. There has been no forfeiture. Under the decree it has been adjudicated that the appellee is not in default. If the bill had been dismissed the parties would have been in the same position as before it was filed. In no event could either party gain or lose a freehold. A freehold is involved in a suit to cancel a deed purporting to convey a freehold and to remove it as a cloud on the title, or in a suit for the specific performance of a contract to convey a freehold estate, but no such relief is involved in this case. A bill which seeks to remove an executory or conditional contract for a conveyance as a cloud upon the title does not involve a freehold where the title is not questioned. (*Rankin* v. *Stewart,* 308 Ill. 598; *Reinhardt* v. *Matheson,* 333 id. 56; *Kesner* v. *Miesch,* 204 id. 320; *Irwin* v. *Manley,* 276 id. 353; *Lee* v. *Boyd,* 279 id. 345.) A freehold is involved where the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, or where the title to a freehold is so put in issue by the pleadings that the decision of the case necessarily involves a decision of such issue. (*Lederer* v. *Rosenston,* 329 Ill. 89.) The word "freehold" does not

include the mere right to do that which in equity will entitle a party to a freehold. *Peterson* v. *Peterson,* 264 Ill. 121; *Holinger* v. *Dickinson,* 252 id. 123; *Duncanson* v. *Lill,* 322 id. 528.

The cause will be transferred to the Appellate Court for the Third District.                    *Cause transferred.*